By the Court.—Monell, Ch. J.
Unless the decision of this case is to be controlled by other considerations than a strict application of the provisions of the act of 1853 (Laws 1853, p. 1065), it must be determined that the assessment in question did not become an “incumbrance” upon the property until after the delivery of the deed. The sixth section of the Act referred to is as follows:
“ No assessment for any improvement shall hereafter be deemed to be fully confirmed, so as to be due, and be a lien upon the property included in it, until the title thereof, with the date of confirmation, shall have been entered, with the date of such entry, in a record of the titles of assessments, to be kept in the Street Commissioner’s office, and which may be used as an index to a record of assessments ; and until the-title of the said assessments shall have been also entered, with the date of confirmation, and the date of such entry, in a record of the titles of assessments,, confirmed, to be Tcept in the office of the QlerTc of Arrears.”
The deed was delivered on the 5th of December, and the entry required by the section quoted, was not made until the 24th of the same month, from and after which time only, it became a lien.
A later statute (Laws 1871, p. 741, § 1) also provides, that—“No assessment for any city improvement shall be deemed to be fully confirmed, so as to be due, and be a lien upon the property included in the assessment,. *264 until the title thereof, with the date of the confirmation by the Supreme Court, or by the Board of Revision and Correction of Assessments, as the case may be, shall be entered, with the date of such entry, in a record of the titles of assessments confirmed, to be kept in the office of the Bureau of the Clerk of Arrears.”
These statutes definitely fix the time when an assessment shall become a lien, and must govern in the construction and enforcement of covenants against incumbrances, unless upon some principle of equity, a different rule should prevail.
The covenant in the plaintiff’s deed was, that at the time of its delivery, the premises should be free from incumbrances (and an" incumbrance'' is defined to be a lien upon an estate.—Bouvier).
Under the statutes referred to, the assessment was not an incumbrance at the delivery of the deed, and there was. therefore, no breach of the plaintiff's covenant.
The language of the acts is explicit, and it was decided in Dowdney v. The Mayor, &c. of N. Y. (54 N. Y. 186) that the required entry must be made before the assessment could become a lien ; and if not made prior to the delivery of the deed, there could not be a breach of the covenant against incumbrances.
The power to assess for benefit, was re-enacted by the Revised Laws of 1813 (2 R. L. 39) which declares that the amount of the assessments shall be a “real incumbrance ” upon the lands assessed ; and the only purpose of the subsequent acts, was, not to create, but to fix the time when the “incumbrance” should take effect upon the lands. That is now definitely determined by the entry in the record of assessments in the office of the Street Commissioner and Bureau of Clerk of Arrears.
The assessment, therefore, not having become a lien when the covenant was made, there was no right of action upon the covenant; nor did it afford any right *265 to the purchaser to refuse to take the title under the terms of his contract with the plaintiff. Those terms were to convey free from incumbrances, and that the property was free from any legal incumbrance when the conveyance was made.
It is very clear, therefore, that had the defendant paid the assessment, he would have been without remedy under the contract or the deed. No covenant had been broken, as no lien had been created until after the covenant was made.
The defendant, however, claims, that notwithstanding the assessment had not become a legal lien when the covenant was made, the plaintiff is, nevertheless, liable to pay it, on the ground that the assessment had in fact previously been made; that the improvement had been completed, and the benefit derived before the sale.
The work was finished prior to May, 1870. The assessment was apportioned in August. It was confirmed November 7, and entered in the office of the Board of Assessors, November 21, 1870.
This claim of the defendant, however, is not made under or upon the covenant in the deed, but under the subsequent and separate agreement between the parties, which is to the effect that the payment of the assessment by the plaintiff should not affect the question or his “ liability ” to pay it.
In support of this claim we are referred to the case of Rundell v. Lakey (40 N. Y. 513).
In that case the defendants conveyed the land on September 1. The taxes for that year had been assessed to the defendants. The assessment roll had been completed on the first of the previous August, but the annual meeting of the Supervisors was not held until the succeeding November, when, and not until when, the tax was extended upon the roll.
The court held that the defendants were liable for *266 the tax, upon the ground that the tax is imposed upon the person of the owner on account of the ownership,, and that his liability is conclusively fixed by the completion and delivery of the roll.
The deed, conveying the property in that case, contained only a covenant of quiet and peaceable enjoyment, and of warranty, which is not broken except by actual ouster. It contained no covenant against incumbrances.
But the plaintiff paid the tax under an agreement with the grantors that “in case they (the grantors) were legally liable to pay it,” they would refund the amount.
The only, question, therefore, in that case, was as to the legal liability of the grantors to pay the tax. There was no question of lien or breach of covenant, to support the action, or to supply a consideration for the subsequent agreement. Had that agreement not been made, the purchasers would ha.ye had no remedy against their grantors, had they paid the tax, except, perhaps, after an actual ouster under a tax sale.
The decision in Rundell v. Lakey, rested solely upon the construction of the Revised Statutes concerning assessments and the collection of taxes (1 R. S. 387). By those statutes a tax is made exclusively a personal liability. No lien is created upon the lands. The tax is imposed upon the owner and not upon the land. - It is collected of the owner out of his personal estate. He is the primary debtor, and the warrant to the collector, which the statute authorizes, is the judgment and execution for the debt, and must be made out of the goods and chattels of the debtor. Nor is it confined to chattels on the lands, but may be collected out of the goods and. chattels of the person taxed, “ wheresoever the same may be found ” within the district of the collector.
The land assessed is only secondarily liable: In *267 default of .sufficient goods and chattels of the person assessed, provision is made for the sale of the lands, in respect to the ownership of which the táx was imposed. And so far, and so far only, a tax may be regarded, "perhaps, as a lien, or in the nature of a lien, upon the lands. But whatever it is, it is subordinated to the personal liability of the owner, and can be enforced only in default of collecting out of the owner’s goods.
The decision, therefore, in the Rundell case being upon a construction of the revised statutes and of the agreement of the parties, has not, in my judgment, any application to the question now before us, which depends upon a different state of the law and facts.
The special laws concerning the assessment and collection of taxes in the city of New York, provide, beside the personal liability of the owner, that assessments for street improvements shall be a lien or charge upon the lands improved (2 Laws [R. L.] 1813, 407, § 175), and which lien or charge, by subsequent acts (1853 and 1871, supra) becomes fixed, as an incumbrance upon the lands, only from the time of the entry of the assessment in the designated offices.
Under these special laws, a lien upon the lands is created in the first instance, in the nature of a mortgage thereon (2 R. L. 446, § 271), which may be enforced by a sale of the land (Laws of 1824, 39, ch. 49).
Under the revised statutes it is made the duty of the collector of a tax, to levy the same by distress and sale of the goods and chattels of the person who ought to pay (2 Rev. Stat. 397, § 2). And, as we have seen, resort can be had to the lands, only in default of such goods and chattels. But under the acts applicable exclusively to the city of New York, no similar duty is imposed upon the officer clothed with authority to collect an assessment. The owner is liable upon demand to pay the sum assessed, and, in default of such *268 payment, it is, made lawful to levy the same by distress and sale of his goods and chattels (2 R. L. 1813, § 175). But nowhere is it required to be done. It is permission merely, and a cumulative remedy.
Nor does the right or power to sell the lands depend upon a deficiency of goods and chattels. The act of 1816 (cb. 115) provides, that on proof of neglect or refusal to pay, the corporation may proceed to sell. No attempt and failure to levy of the goods and chattels need be shown, nor any proceeding whatever, to enforce personal liability.
It is evident, therefore, that in this city,' unlike other parts of the State where the Revised Statutes apply, the land, if not the primary fund, is at least cotemporaneous with the personal liability. Resort may be had to either in the first instance, except that a preliminary demand must be made of the owner, if he can be found, before proceeding to sell the land ; and when the land is resorted to in the first instance, it necessarily extinguishes the personal liability.
Under this state of the law in this city, it became important that a time should be definitely fixed when the lien should become complete, and a record made which should be open to public inspection. In the innumerable sales and transfers of real property in this city, it affords a marked facility to purchasers to ascertain with certainty the condition of the title they buy ; and determine with equal precision upon whom the burthen of payment shall fall.
Not- only is the law, applicable to the case before us, entirely different from the statutes under which the Run dell case was decided, but the facts are also different.
The agreement in that case had reference to the personal liability of the grantors to pay the tax. There was no lien on the land, therefore the sale was not subject to a lien. The personal obligation to pay ré *269 mained, notwithstanding the sale ; and, in the view of the court, was collectable of the grantor after the sale.
In the agreement which the parties to this action made, it is very clear that they intended that the payment of the assessment, by the grantor or grantee, should depend upon the actual existence of it as an incumbrance, when the covenant was made. It was not their design to test the grantor’s liability by any fact other than such as the record in the bureau of arrears would furnish. If at the delivery of the deed the assessment had become a lien, then, under the grantor’s covenants, he was bound to pay. If not a lien, there was not any breach of the covenant.
It is therefore clear that the agreement in this case can not have the interpretation or force and effect that was given to the agreement in the Rundell case ; and the liability of the plaintiff under his contract is to be determined by the single fact or question, whether the lien existed when he conveyed the lot; and not upon a.ny possible supposed liability fixed by the imposition of the tax.
Under this construction of their agreement, and under the laws fixing the time when an assessment becomes a lien, there was no incumbrance on the land for which the plaintiff was liable. '
If I am correct in my conclusion that the agreement of these parties was founded upon the covenant against incumbrances, then the case of Dowdney v. The Mayor, &c., of N. Y. (ubi supra), is applicable and decisive.
In that case, like the one before us, the entry of the assessment was made in the proper office after the conveyance, and the court held that it was not a lien or incumbrance within the meaning of the covenant against taxes, assessments, &c.
There is a further view pressed upon our attention by the defendant’s counsel.
*270 He claims that beyond all other considerations there is a strong equitable reason for charging the assessment upon the plaintiff.
The work was finished, and the property received the direct and immediate benefit of the improvement, several months previous to the sale. It is claimed that such benefit was equal to the amount assessed, and was added by the owner to the price demanded for the property.
It does not appear, however, that either party considered the subject of the improvement in any aspect. The plaintiff was absent during the interval between the completion of the work and making the contract of sale ; and there is no evidence that he knew or had any information in respect to it. And it does not appear that the defendant made it any part of his examination, or estimated it in the price he agreed to pay. In short, the supposed beneficial effect of the improvement does not seem to have influenced either party in the purchase and sale.
Ñor can a different conclusion be drawn from the fact that, prior to the contract, the apportionment of the assessment had actually been made ; and that prior to the deed, the expense of the improvement had been ascertained by the assessors, and their assessment confirmed by the board of revision, and duly filed.
There is no evidence to warrant the conclusion that the existence of these facts influenced either of the parties in any degree, in the contract of sale, or in the delivery and acceptance of the deed.
In support of this equity we were referred to Post v. Leet (8 Paige, 337), where a purchaser at a master’s sale was relieved from his bid by the existence of a large unconfirmed assessment. . But it was put upon-the ground that the bid was made under a mistake as to the facts of the case, and that the buyer was actually misled by the written terms of sale.
*271 There are no such features in the case before us.
Another case decided by a referee to which we were also referred (Cranston v. Mason), has also this essential difference. The action was upon the covenant against incumbrances ; and the referee found as a fact, that at the time of the delivery of the deed the grantor informed the purchaser that all taxes, assessments, charges, and incumbrances on the property had been paid, and that there were no incumbrances of any kind on the property. That this fact had great influence upon the learned referee, is to be seen from his version of it in his written opinion, where he says the defendant gave the plaintiff to understand that the street improvements had been paid for, and that there was no charge or incumbrance on the lots in consequence of those improvements.
But the referee was unable to distinguish Bundell v. Lakey (supra) and thought it a controlling authority. In that, I think, he was in error; and as his general conclusion rested upon a mistaken view of the liability incurred, his results must fall for the want of adequate support.
The law has provided a record open to the public, which is the only safe guide in the multitudinous transactions in real estate in this city. An assessment for a street improvement can not become a lien on land until it is made such record ; and no one is required, be he seller or purchaser, to look beyond or behind that record. If he finds no confirmation, then he is protected; and it is enough, to say that in common practice the search for liens and incumbrances does not extend beyond the bureau where the record must be kept.
If parties desire further protection they must secure it by their contracts.
*272 The plaintiff should have judgment upon the verdict, with costs.
Curtis and Speir, JJ., concurred.